BROWNING, J.
Kevin Daniel Smith (Appellant) appeals a final order revoking his community control. Because the State established, by a preponderance of the evidence, that Appellant substantially and willfully violated two of the conditions of his community control, we affirm the revocation order. See Burgin v. State, 623 So.2d 575, 576 (Fla. 1st DCA 1993); Evans v. State, 427 So.2d 1082 (Fla. 1st DCA 1983).
“Trial courts have broad discretion in determining whether a term of community control has been violated, and the proper standard of review is whether the lower tribunal abused its discretion.” Davis v. State, 704 So.2d 681, 683 (Fla. 1st DCA 1997). Condition (9) of the community control agreement required Appellant to report in person to his community control officer at least one time a week or, if unemployed, to report as directed. Condition (26) required Appellant to complete the Teen Challenge program. In pertinent part, the affidavit of violation, which was signed by Officer Wendy Wilson on October 22, 2003, alleged that Appellant had violated Condition (9) “[b]y failing to report in person to his Officer at least one (1) time a week, in that the aforesaid failed to do so during the week(s) of October 20, 2003”; and that Appellant had violated Condition (26) “[b]y failing to complete the Teen Challenge program, in that on September 16, 2003, the aforesaid was given specific verbal and written instructions to complete the Teen Challenge program, and this the aforesaid failed to do.”
Officer Wilson testified that she was Appellant’s community control supervisor and the custodian of Appellant’s records, and that Appellant had signed a document indicating he understood the conditions to which he agreed. The officer testified that on October 20, 2003, she had seen Appellant at his mother’s home and had reminded Appellant of his obligations while on community control. During that visit, Officer Wilson orally instructed Appellant to report to her on October 21, 2003. The officer testified that Appellant failed either to report to her on October 21, as instructed the day before, or to communicate to her on that date why he was not reporting to her in person. Accordingly, Officer Wil *423 son signed the affidavit of violation the next day.
Appellant conceded at the revocation hearing that Officer Wilson did, in fact, visit his house on October 20 and instructed Appellant to report to her. Asked why he had not reported to the officer the next day, Appellant testified he had been having “spells” involving headaches and nausea, which almost impaired his physical movement. Given this testimony, the trial court accepted Officer Wilson’s account that she had specifically told Appellant to report to her the next day (October 21) and that Appellant had neither done so nor communicated to her on that date that he was sick and could not report in person. Appellant’s failure to report to his supervising officer in a timely manner constitutes a substantial, willful violation of the terms of his community control.
As to the second violation, it is undisputed that Appellant failed to complete the Teen Challenge program. Appellant was accepted into the program in mid-September 2003 to get treatment. The factual basis for Appellant’s dismissal from the program was his failure to provide independent verification of his whereabouts after being dropped off at the hospital on October 13, 2003, for a doctor’s appointment. Officer Wilson testified that the director of the Teen Challenge program had called her to report that Appellant returned to the program center at 11:20 p.m. on October 13 and was refused entry for failing to provide adequate proof of having been at the hospital for the extended period of time when his whereabouts were unknown.
The hospital was not within walking distance of the Teen Challenge program site. George Christopher Corbitt, the Teen Challenge program administrator, testified that at their first meeting, he had discussed with Appellant the program’s rules and requirements. One of those requirements was to provide proof of being at the hospital or doctor’s office for medical visits. Ordinarily, this was satisfied by written documentation verifying a visit to the doctor and any current health/treatment matters, which information was placed in the files of program participants.
Appellant had complained of headaches and blurred vision. On the date in question, Appellant was dropped off at the hospital emergency room to be admitted, but due to the limited number of personnel in the Teen Challenge program, neither Mr. Corbitt nor anyone else from the program accompanied Appellant to the check-in desk. When Mr. Corbitt returned to the hospital emergency room around 7:00 p.m. to pick up Appellant and take him back to the program center, the hospital admissions staff had no recollection or documentation of Appellant’s having been there or having admitted himself on that date. After looking around for about 30 minutes, Mr. Corbitt returned to the program center without Appellant. Appellant’s mother came over, and she and Mr. Corbitt looked around the hospital but could not find Appellant. Mr. Corbitt returned again to the program center. The Teen Challenge program telephones are staffed 24 hours a day, but Mr. Corbitt had no record of Appellant’s calling to report his whereabouts from 8:00 p.m. to 11:00 p.m. on the date in question.
Around 11:20 p.m., Appellant’s mother brought Appellant to the program center, but Mr. Corbitt refused to admit Appellant for failure to provide proof that he had been at the hospital during the hours in question. Other than Appellant’s oral assertion that he had been at the hospital during those hours, Appellant provided no proof. Mr. Corbitt had intended to take back Appellant into the program if Appel *424 lant had brought the requisite proof. The program administrator testified that if Appellant had called the house or the program center, someone would have gone to get him at the hospital. A morning or two later, Appellant called Mr. Corbitt at the program office and said he was going to the hospital to get the hospital report and bring it to the office. However, Appellant never followed through on this matter. After a previous visit to the hospital, Appellant had presented a yellow verification sheet upon returning to the program center. Appellant was terminated from the Teen Challenge program in mid-October 2003.
Appellant testified that after Mr. Corbitt dropped him off at the hospital emergency room on the date in question, Appellant discovered that the neurologist to whom he had been recommended was in a different building. Appellant testified that he made an appointment and remained there for several hours because other patients were ahead of him. Appellant said he was seen by one doctor and was discharged around 8:00 p.m., whereupon Appellant walked to the emergency room lobby, tried to call the Teen Challenge program center until 11:00 p.m., but got a couple of busy signals. This did not surprise Appellant, for it was the evening period when program participants are usually on the telephone. Appellant testified that after waiting three hours in the emergency room, he called his mother and asked her to take him back to the program center. Appellant acknowledged that he could have asked the neurologist for a verification slip. Appellant conceded he never provided Officer Wilson or Mr. Corbitt with written proof of his October 13 medical visit or verification of his whereabouts during the hours before his mother brought him back to the program center.
To the extent that Mr. Corbitt’s and Appellant’s accounts of the evening of October 13 do not jibe, the trial court accepted the program administrator’s testimony. Given Appellant’s failure to provide adequate proof of his medical appointment and of his whereabouts after the purported appointment, plus his failure to contact the program center or his mother in a timely manner during the evening of October 13 to explain his reason for being away from the program center, the trial court correctly found Appellant to be in substantial, willful violation of Condition (26). Appellant has not shown an abuse of discretion.
Accordingly, we AFFIRM the order revoking community control.
KAHN, C.J.; and THOMAS, J., concur.